IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| KALEB ALEXANDER HOOSIER,<br><br>Plaintiff,<br><br>v.<br><br>CITY AND COUNTY OF HONOLULU,<br><br>Defendant. | Case No. 25-cv-00312-DKW-KJM<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION TO DISMISS, AND (2) DISMISSING CERTAINS CLAIMS WITH PREJUDICE** |

On January 14, 2026, the Court granted in part Defendant City & County of Honolulu's motion to dismiss for one principal reason: Plaintiff Kaleb Hoosier's original Complaint failed to provide sufficient clarity as to the scope and nature of his five claims, all of which revolved around the constitutionality of a City ordinance "criminaliz[ing] sitting or lying on public sidewalks in designated areas[]". One day later, on January 15, Hoosier filed an Amended Complaint, again alleging five claims challenging the same Ordinance. Among other things, Hoosier clarified that his claims were brought "as applied" to him, including being cited 11 times within a seven-month span in 2025 for allegedly violating the Ordinance.

The City has now moved to dismiss the Amended Complaint with prejudice, asserting that Hoosier has failed to both cure deficiencies identified in the January

14, 2026 Order and state a claim. Hoosier opposes the motion to dismiss, arguing that the Amended Complaint "does exactly what this Court instructed." Upon review of the parties' briefing and applicable case law, the Court agrees partially with both parties. Hoosier's claims under the Eighth Amendment (Claims One and Five) and claim regarding the City's alleged failure to train its police officers (Claim Four) fail to state a claim for relief. Further, because leave to amend has previously been granted and/or would be futile, dismissal is with prejudice. However, with respect to Hoosier's due-process and equal-protection claims (Claims Two and Three), the Court finds that the Amended Complaint cures the principal deficiency identified in the January 14, 2026 Order, and the City's other argument(s), if any, fall short. Therefore, these claims may proceed. As a result, the motion to dismiss, Dkt. No. 38, is GRANTED IN PART and DENIED IN PART, as further explained below.

## BACKGROUND

Hoosier initiated this proceeding with the filing of a four-page Complaint on July 24, 2025. Dkt. No. 1. Therein, Hoosier challenged the Ordinance on five grounds: (1) for violating the Eighth Amendment's prohibition on cruel and unusual punishment; (2) for violating the Fourteenth Amendment's protection of due process; (3) for violating the Fourteenth Amendment's prohibition on denying

equal protection of the laws; (4) for the City's alleged failure to train its police officers in enforcing the Ordinance; and (5) for violating the Eighth Amendment's prohibition on excessive fines.

On January 14, 2026, based on the City's motion to dismiss the Complaint, Dkt. No. 28, the Court dismissed all of Hoosier's claims with leave to amend, Dkt. No. 33. First, the Court clarified that, because all of the claims were brought against a municipality such as the City, they were properly considered under *Monell v. Dep't of Soc. Services of the City of New York*, 436 U.S. 658 (1978). Second, although the Complaint alleged the unconstitutionality of the Ordinance in various respects, the claims were unclear on a number of grounds, including the failure to identify whether they were brought facially, as-applied, or both, and they improperly relied on conclusory assertions of misconduct. Because these deficiencies could be cured, the Court permitted leave to amend.

On January 15, 2026, Hoosier filed the operative Amended Complaint. Dkt. No. 34. Therein, he alleges the following facts. Hoosier is an "unhoused" resident of Honolulu, Hawai'i. *Id*. at 4.[1] Between May and December 2025, Hoosier was cited 11 times under the Ordinance, with each citation involving

---

[1] Because the paragraphs of the Amended Complaint are not sequentially numbered, the Court cites to the page numbers assigned by CM/ECF in the top-right corner of the document, *e.g.*, "Page 4 of 39". The Court also cites to Hoosier's other filings in this case in a similar fashion for the same reason.

3

orders to move, threats of arrest, and "forced displacement" by police officers. *Id.* at 2, 9-10.² "Each incident followed a similar pattern[,]" including Hoosier sitting in a "public space", being approached by officers of the Honolulu Police Department (HPD), being ordered to move by the officers, Hoosier explaining that he "had nowhere to go[]", and being "physically block[ed]" and "threat[ened]" with arrest by the officers. *Id.* at 10-11. Ten of the citations were "dismissed as part of a global plea agreement[,]" while the remaining citation was "dismissed for lack of evidence." *Id.* at 3. None of the citations resulted in a conviction, fine, or jail-time. *Id.*

According to the Amended Complaint, Honolulu suffers from a "chronic and widely acknowledged shortage of shelter beds relative to its unhoused population." *Id.* at 5. For example, "during all times relevant, [Hoosier] had no access to any shelter bed or lawful private space." *Id.* at 6. As a result, Hoosier did not have a "place to sit, lie down, or sleep except in public." *Id.* The Ordinance, however, "prohibits sitting or lying on public sidewalks in designated areas during specified hours[]" and "authorizes criminal citations, fines, and jail time[,]" with "no exception for people who have no access to shelter or private property." *Id.* at 7.

---

²The Amended Complaint, at different times, alleges that the citations occurred between (1) April and July 2025 and (2) April and November 2025. Dkt. No. 34 at 2, 9. A chart in the Amended Complaint, however, provides that the citations were issued between May and December 2025, *see id.* at 9-10, which is the date range used herein.

The Amended Complaint further alleges that the City "maintains a policy and practice of enforcing [the Ordinance] against visibly unhoused individuals in commercial and tourist areas." *Id*. The City's police officers are also allegedly trained to "[c]lear areas of homeless presence" with the "objective" of removing "unhoused people from visible public space." *Id*. at 8. This is allegedly despite the City "know[ing] that many of the people targeted by this policy have nowhere lawful to go." *Id*.

Like the Complaint, the following five claims are asserted in the Amended Complaint: (1) violation of the Eighth Amendment's prohibition on cruel and unusual punishment (Claim One); (2) violation of the Fourteenth Amendment's due process clause (Claim Two); (3) violation of the Fourteenth Amendment's equal protection clause (Claim Three); (4) violation of *Monell* due to an "official ordinance", an "official enforcement policy", a "widespread custom and practice", and a "failure to train and supervise" (Claim Four); and (5) violation of the Eighth Amendment's prohibition on excessive fines. *Id*. at 14-27. All of these claims are brought under 42 U.S.C. Section 1983, solely against the City, and "as applied" to Hoosier. *Id*. at 2-5.

On January 29, 2026, the City moved for dismissal of the Amended Complaint with prejudice. Dkt. No. 38. First, the City argues that Hoosier

challenges the Ordinance facially and as-applied. Second, the City argues that the Amended Complaint fails to cure deficiencies identified in the January 14, 2026 Order. Third, the City argues that the Amended Complaint fails to allege "specific facts" supporting Hoosier's claims. Fourth, the City argues that Hoosier has not received *any* fine under the Ordinance, let alone an excessive one. On the same day as the City's motion to dismiss, January 29, 2026, Hoosier filed an opposition to the same. Dkt. No. 39. He argues that he has alleged sufficient facts to survive a motion to dismiss, his Eighth Amendment claims allege sufficient injury, and his allegations are not conclusory. Hoosier also appears to suggest that Claim Five, which relates to allegedly excessive fines, consists of "[f]acial and as-applied challenges…." *Id*. at 6. With the filing of the City's reply, Dkt. No. 44, this Order now follows.

## STANDARD OF REVIEW

Rule 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"  556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In addition, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).  Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8(a)(2). *Id*. at 679.

In addition, the Court liberally construes the allegations of the pro se Amended Complaint.  *See Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987).  A pro se litigant is also generally "entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).  However, leave to amend is not required when, among other things, it would be futile or there has been repeated failure to cure a deficiency.  *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir.

7

2008); *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

## DISCUSSION

As in the January 14, 2026 Order, because all of Hoosier's claims are brought under Section 1983 and against a municipality such as the City, the Court begins by setting forth the legal framework for bringing such claims.

In *Monell*, the U.S. Supreme Court held that a municipality could be "sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id*. at 690-691.  In addition, the Supreme Court has held that a municipality can be liable under Section 1983 for a "failure to train" when "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v, Harris*, 489 U.S. 378, 388 (1989).  A municipality, on the other hand, cannot be held liable under Section 1983 "*solely* because it employs a tortfeasor–or, in other words, a

municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (emphasis in original).

As a result, a plaintiff can allege municipal liability under Section 1983 in one of three ways. First, a municipality can be liable when it or a person with final policymaking authority within the municipality expressly enacts or authorizes a policy respecting a challenged action. *Id*. at 690; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-483 (1986) ("The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable."). In this regard, a municipality can also be liable when a final policymaker "ratifie[s]" a subordinate's conduct and the basis for it. *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066-67 (9th Cir. 2013). Second, a municipality can be liable for a custom that, although not expressly enacted, is "so permanent and well settled" it operates with the force of law. *Monell*, 436 U.S. at 691 (quotation omitted). Third, a municipality can be liable for a failure to train its employees when such failure amounts to deliberate indifference towards the rights of its inhabitants. *City of Canton*, 489 U.S. at 388. In addition, a plaintiff must allege that a policy, custom, or failure to train actually caused a municipality's employee(s) to commit the constitutional deprivation. *Id*. at 391; *Monell*, 436 U.S. at 694.

With this framework, the Court addresses Hoosier's claims, beginning with those brought under the Eighth Amendment.

1. **Eighth Amendment – Claims One and Five**

In Claims One and Five, Hoosier alleges that the Ordinance and its penalties of a maximum $1,000 fine and up to 30 days in jail constitute cruel and unusual punishment and excessive fines under the Eighth Amendment.[3] As mentioned, in the Amended Complaint, Hoosier asserts that he brings these claims "as applied". Dkt. No. 34 at 2-3.[4] In the motion to dismiss, the City argues that these claims fail because the Amended Complaint does not allege that Hoosier has been punished, by way of either a fine or imprisonment, under the Ordinance. Dkt. No. 38-1 at 3, 5. In response, Hoosier argues that his alleged Eighth Amendment injury is "enforcement itself" from "repeated criminal citations", rather than from conviction or imprisonment, citing *Martin v. City of Boise*, 920 F.3d 584 (9th Cir. 2019). Dkt. No. 39 at 5.

Upon review, the Court agrees with the City that the Eighth Amendment claims fail under applicable law. With respect to Claim One, concerning cruel and

---

[3]As explained in the January 14, 2026 Order, because these claims challenge an ordinance expressly enacted by the City, they are properly brought under *Monell*. Dkt. No. 33 at 6 & n.3.
[4]The Court, thus, disagrees with the City's characterization of the Amended Complaint as bringing facial and as-applied challenges to the Ordinance. To the extent Hoosier's reply brief attempts to create a facial challenge not alleged in his pleadings, it is addressed further below.

10

unusual punishment, Hoosier's reliance on *Martin* is misplaced because, in 2024, the U.S. Supreme Court abrogated the reasoning referenced by Hoosier. Specifically, the Supreme Court held that the "Cruel and Unusual Punishments Clause focuses on the question what method or kind of punishment a government may impose *after a criminal conviction*, not on the question whether a government may criminalize particular behavior in the first place or how it may go about securing a conviction for that offense." *City of Grants Pass, Ore. v. Johnson*, 603 U.S. 520, 542-543 (2024) (emphasis added, quotation marks omitted); *see also Potter v. City of Lacey*, 2024 WL 4511612, at *1-2 (9th Cir. Oct. 17, 2024) (stating that a "vehicle sheltered" person's challenge to parking laws was "foreclosed" by *Grants Pass*). Here, Hoosier alleges that he has not been convicted of any offense under the Ordinance—in fact, he alleges that all citations have been dismissed. Dkt. No. 34 at 12. In addition, the alleged punishments here—up to 30 days in jail and a $1,000 fine—are the same or less severe than the ones upheld in *Grants Pass*. *Grants Pass*, 603 U.S. at 537, 543 (involving 30 days in prison and a $1,250 fine). Therefore, Hoosier's as-applied challenge under the Cruel and Unusual Punishments Clause fails to state a claim.

As for Claim Five, which concerns excessive fines, Hoosier's as-applied challenge fails for a straightforward reason. The Excessive Fines Clause of the

11

Eighth Amendment "limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense." *Pimental v. City of Los Angeles*, 974 F.3d 917, 921 (9th Cir. 2020) (quotation and citation omitted). Here, the Amended Complaint does not allege that *any* fine has been extracted from Hoosier, let alone an excessive one. Therefore, this as-applied challenge must also fail for failure to state a claim. To the extent Hoosier attempts to create, in his response, a facial challenge under the auspices of Claim Five, it too fails under applicable law. Notably, the Amended Complaint and the response brief both focus upon the *maximum* penalty allegedly available under the Ordinance: $1,000. This is <u>not</u> the proper inquiry, however, for a facial challenge. *Diamond Sands Apartments, LLC v. Clark Cty. Nev.*, 164 F.4th 759, 765 (9th Cir. 2026) (explaining, with respect to a facial challenge under the Excessive Fines Clause, that a plaintiff "must demonstrate that [an ordinance] is unconstitutional in *every* conceivable application.") (emphasis in original, quotation marks omitted). This is problematic here, given that there are no allegations that the maximum penalty has been imposed, whether against Hoosier or anyone else, despite Hoosier's 11 citations, and no argument that a *minimum* penalty would represent an excessive fine under the Eighth Amendment. *See id*. (stating that a plaintiff "cannot rely on

12

a worst-case analysis that may never occur to demonstrate facial unconstitutionality….") (quotation marks omitted).

Finally, in light of the case law discussed above, the Court also finds that leave to amend these claims under the Eighth Amendment would be futile. Therefore, Claims One and Five are DISMISSED WITH PREJUDICE.

### 2. Fourteenth Amendment – Claims Two and Three

In Claim Two, Hoosier again challenges the Ordinance directly, alleging that it violates the Fourteenth Amendment's Due Process Clause because, in enforcing the Ordinance, the City has "seized" him for the "sole purpose" of removing him from "visible public space[,]" even though he has "nowhere lawful to go…." Dkt. No. 34 at 18-19. In Claim Three, Hoosier appears to take a different approach in challenging the Ordinance. Specifically, he alleges that the Ordinance violates the Fourteenth Amendment's Equal Protection Clause because enforcement of the same "is not neutral in practice" and, instead, "is enforced almost exclusively against visibly homeless individuals." *Id.* at 21. In other words, liberally construed, Hoosier appears to allege, or at least attempt to allege, a "custom or practice" claim under *Monell*.

In the motion to dismiss, the City argues that these claims fail because "[t]here is no mention of any facts connecting the Ordinance to *Monell* or its

13

unconstitutionality under Claim 2" and Claim Three is "conclusory, unsupported by any factual allegations…." Dkt. No. 38-1 at 3-4. Based upon the City's extremely limited analysis of Claims Two and Three, the Court does not agree that they are subject to dismissal at this time. First, to reiterate, the Court construes these claims as being brought as-applied to Hoosier. Second, the Court disagrees that the claims do not "connect[] the Ordinance to *Monell* or its unconstitutionality", as they either directly challenge the Ordinance or rely upon an alleged "practice" of discriminatory enforcement.

Finally, while both claims certainly contain conclusory allegations, the Court disagrees that they are *un*supported by factual allegations. For example, with respect to Claim Two, Hoosier alleges that he sits in public spaces without posing a threat or obstacle, he is surrounded by police officers and "physically block[ed]" from remaining in place, and made to "wander for hours". In Claim Three, he alleges that he is "unhoused", has been cited 11 times under the Ordinance in less than a year, and "[h]oused individuals" are not cited when they sit in similar public spaces. While these allegations may or may not be accurate or even, ultimately, rise to an actionable claim, the City does not address these matters and/or ignores the allegations in the motion to dismiss. The Court will not do this work for the

City, and finds that, on the present record, Claims Two and Three plausibly give rise to an entitlement to relief and may proceed.

### 3. Failure to Train – Claim Four

Because Claim Four, perhaps understandably, has created a degree of confusion in this case, the Court initially clarifies the construed scope of the same. As explained, because this case involves a single municipal Defendant and challenges the constitutionality of the Ordinance, all claims must be brought under *Monell* and, by extension, Section 1983.  Despite this, the Amended Complaint expressly relies upon *Monell* for only one claim: Claim Four.  As a result, Claim Four, as alleged, constitutes a collection of all of Hoosier's claims.  Specifically, in the Amended Complaint, Claim Four consists not only of a "[f]ailure to train" claim, but also claims based on an "official ordinance", "official enforcement policy", and "widespread custom and practice".  Those latter three, however, are the premise for and captured by Hoosier's other claims, which have been discussed already herein: Claims One, Two, and Five challenge an enacted Ordinance; while, liberally construed, Claim Three challenges an alleged practice.[5]  It is, therefore, unnecessary and superfluous for Hoosier to *re*-allege those matters *again* as part of

---

[5]Contrary to Hoosier's apparent belief, the Amended Complaint, even liberally construed, does not allege any allegations suggesting a wrongful *official policy* exists.

15

Claim Four. As a result, the Court construes Claim Four as <u>only</u> bringing a "failure to train" claim.

So construed, Claim Four fails for the same reasons identified in the January 14, 2026 Order. For example, other than failing to train officers regarding unidentified "constitutional limits", Dkt. No. 34 at 27, the Amended Complaint (like the Complaint), does not identify even one example of the training the City fails to provide its officers or how such missed training *caused* any alleged constitutional deprivation. Similarly, the Amended Complaint conclusorily asserts that the City's failure to train "constitutes deliberate indifference." *Id*. There are simply no *factual* allegations in the Amended Complaint to support these bare conclusions and, therefore, Claim Four is subject to dismissal for failure to state a claim. Further, because Hoosier was advised of this deficiency in the January 14, 2026 Order and has failed to cure the same, dismissal of Claim Four is with prejudice.

# CONCLUSION

For the reasons and to the extent set forth herein, the motion to dismiss, Dkt. No. 38, is GRANTED IN PART and DENIED IN PART. Claims One, Four, and Five of the Amended Complaint are DISMISSED WITH PREJUDICE. Claims Two and Three may proceed.

IT IS SO ORDERED.

Dated: March 9, 2026 at Honolulu, Hawaiʻi.



_____
Derrick K. Watson
Chief United States District Judge

---

*KALEB ALEXANDER HOOSIER v. CITY & COUNTY OF HONOLULU*; CIVIL NO. 25-00312 DKW-KJM; **ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION TO DISMISS, AND (2) DISMISSING CERTAINS CLAIMS WITH PREJUDICE**